IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01972-PAB-CBS

ANETT HARP,
    Plaintiff,

v.

DEPARTMENT OF HUMAN SERVICES, COLORADO MENTAL HEALTH INSTITUTE AT PUEBLO,
    Defendant.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on "Defendant's Motion for Summary

Judgment."  Pursuant to the Order of Reference dated August 11, 2011 and the

memorandum dated August 16, 2012, this matter was referred to the Magistrate Judge.  (*See*

Docs. # 7, # 35).  The court has reviewed the Motion, the pleadings, the exhibits, the entire

case file, and the applicable law, and is sufficiently advised in the premises.


I.      Statement of the Case

        Ms. Harp, an African American woman, brought her Complaint pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §2000e-5.  (*See* Complaint (Doc. #1) at 1 of 54).

During the relevant time period, Ms. Harp worked for the Colorado Mental Health Institute at

Pueblo ("CMHIP").  (*See id.* at 4 of 54).  Ms. Harp alleges that between 2003 and 2008 she

suffered employment discrimination based on her race and gender, retaliation, and hostile

work environment.  (*See id.* at 2 of 54).[1]  Ms. Harp claims that "[f]rom about December 2006

_____

        1       On May 23, 2012, Judge Brimmer accepted the Recommendation of United States Magistrate Judge, granted Defendant's Partial Motion to Dismiss, and dismissed Plaintiff's claim for discrimination based on her alleged disability.  (*See* Docs. # 25, # 26).

through about September 25, 2008, I complained about job discrimination, but my complaints went unresolved." (*See* Doc. # 1-1 at 20 of 53). She was discharged from her Clinical Safety Security Officer II ("CSSO II") job on September 30, 2008. (*See id.*) She was informed that her discharge was due to alleged patient abuse. (*See id.*). Ms. Harp believes that she was fully qualified for her CSSO job and was performing satisfactorily. (*See id.*).

II.     Standard of Review

Defendant seeks summary judgment on the Complaint under Fed. R. Civ. P. 56(c). "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted).

On August 16, 2012, the court directed Ms. Harp to file any response to Defendant's Motion on or before September 14, 2012. (*See* Minute Order (Doc. # 36)). The court's records reflect that Ms. Harp's copy of the Minute Order was not returned to the court as undeliverable. As of this date, Ms. Harp has not filed a response to Defendant's Motion. The Federal Rules of Civil Procedure specifically contemplate the consequences of failing to oppose a summary judgment motion:

> When a motion for summary judgment is properly made and supported, an opposing  party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided by this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).  "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)."  *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002).  "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."  *Id.  See also  Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c)), *superseded on other grounds by Celotex Corp v. Catrett*, 477 U.S. 317 (1986);  *Armstrong v. Swanson*, 2009 WL 1938793 at * 7 (D. Colo. July 2, 2009) ("When a party with the burden of proof fails to respond to a motion for summary judgment, the motion is not reflexively granted; rather, the Court simply deems the non-movant to have waived the opportunity to assert any additional facts and examines whether the facts asserted by the movant warrant a trial or permit entry of judgment as a matter of law.") (citation omitted);  *Barton v. City and County of Denver*, 432 F. Supp. 2d 1178, 1188 (D. Colo. 2006) (although plaintiff's failure to make a substantive response constituted a confession of facts asserted by defendants, it remained incumbent upon the court to make the specific determinations required under Rule 56(c).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings."  *Hall*, 935 F.2d at 1110 n. 3 (citations omitted).  However, the court cannot be a pro se litigant's advocate.  *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

III.   Undisputed Facts

Ms. Harp was employed at CMHIP from 2003 until her termination in 2008.  (*See* Deposition of Anett Harp dated March 10, 2009, Exhibit A to Defendant's Motion (Doc. # 34-1) at 2 of 14;  Letter of Disciplinary Action (Doc. # 1 at 38-42 of 54)).[2]  From 2006 to 2008, Ms. Harp worked as a CSSO II on the F-2 unit, which is a maximum security unit providing long-term care to patients who have been adjudicated as incompetent.  (*See* Doc. # 34-1 at 3 of 14;  SPB Deposition of Irene Drewnicky dated January 13, 2009, Exhibit E to Defendant's Motion (Doc. # 34-5) at 5 of 5).

Ms. Harp's supervisor, Gail Manchester, issued verbal and written warnings to her on five occasions in 2007 regarding her work performance.  (*See* Memo of Expectation dated January 26, 2007, Letter of Corrective Action dated July 30, 2007, memo dated July 25, 2007, memo dated September 14, 2007, and e-mail dated January 27, 2007, Exhibits F, G, H, I, and J to Defendant's Motion (Docs. # 34-6, # 34-7, # 34-8, # 34-9, and # 34-10); *see also* Doc. # 1) at 20, 22, 26, 29-31 of 54; Doc. # 1-1 at 29, 39-40 of 53).  In April 2007, Ms. Harp filed a complaint with the Colorado Department of Human Services Civil Rights Unit, alleging retaliation and harassment by Ms. Manchester.  (*See* Employee Discrimination Complaint Form, Exhibit M to Defendant's Motion (Doc. # 34-13)).  Because Ms. Harp did not identify discrimination based on a protected class, the Civil Rights Unit dismissed her complaint.  (*See* letter dated May 3, 2007, Exhibit N to Defendant's Motion (Doc. # 34-14)).

Due to her complaint against Ms. Manchester, Ms. Harp was assigned to work under a

_____

2      Ms. Harp contested her termination before the State Personnel Board, which concluded that she committed the acts for which she was terminated but that termination was too severe a sanction and ordered her reinstated with back pay. (*See* Initial Decision of Administrative Law Judge, Exhibit C to Defendant's Motion (Doc. # 34-3)). Ms. Harp was reinstated at CMHIP and remained employed there until she resigned in July 2010. (*See* Resignation Form, Exhibit D to Defendant's Motion (Doc. # 34-4)). Ms. Harp's claims in this civil action relate only to events that took place before her reinstatement.

different supervisor, Anna Lewis, from late 2007 to Summer 2008.  (*See* Position Statement dated July 20, 2010, Exhibit O to Defendant's Motion (Doc. # 34-15) at 3 of 5).  While working under Lewis, Ms. Harp experienced "no issues at all relating to harassment or retaliation." (*See id.*).  After Ms. Lewis left CMHIP, Ms. Harp again experienced harassment and retaliation.  (*See id.*).

On July 21, 2008, a patient, D.M., caused a disruption during a group session.  Staff, including Ms. Harp, moved him to the seclusion and restraint room and put him into full restraints at his wrists, ankles, and waist.  (*See* Police Report 2008CR0484, Department of Public Safety, CMHIP, Exhibit P to Defendant's Motion (Doc. # 34-16);  Doc. # 34-1 at 4-14 of 14;  Doc. # 34-5 at 2-3 of 5).  Several staff members involved in the incident observed that Ms. Harp acted prematurely in restraining D.M. and used an unauthorized pressure point control technique on D.M.  (*See* Transcript of State Personnel Board hearing held February 10, March 24, March 26, April 13, and April 15, 2009 before Administrative Law Judge Denise DeForest, Exhibit Q to Defendant's Motion (Doc. # 34-17) at 7 of 24;  Transcript of Interview: Gail Manchester with Irene Drewnicky, Exhibit R to Defendants' Motion (Doc. # 34-18) at 2-4, 6 of 10;  Police Report 2008CR0489, Department of Public Safety, CMHIP, Exhibit T to Defendant's Motion (Doc. # 34-21) at 11-12, 20-26, 33 of 37;  Transcript of Taylor Interview, Exhibit W to Defendant's Motion (Doc. # 34-24);  Transcript of Lawson interview, Exhibit X to Defendant's Motion (Doc. # 34-25)).  D.M. had physical marks that were consistent with witness reports that Ms. Harp used unauthorized pressure point control techniques.  (*See* Doc. # 34-17 at 9 of 24;  Doc. # 34-21 at 36-37 of 37;  Transcript of State Personnel Board hearing, Exhibit Y to Defendant's Motion (Doc. # 34-26)).

A police investigation resulted in a finding of probable cause of patient abuse by Ms. Harp.  (*See* Doc. # 34-21).  Ms. Drewnicky, the Assistant Superintendent of CMHIP, conducted an extensive internal investigation into the allegations of patient abuse by Ms.

Harp. (*See* Delegation of Authority Memo dated August 25, 2008,  Exhibit A-1 (Doc. # 34-28);  Transcript of State Personnel Board hearing, Exhibit A-2 to Defendant's Motion (Doc. # 34-29); Abuse/Physical Occurrence Report (Doc. # 1-1 at 4-11 of 53).  Ms. Drewnicky concluded that Ms. Harp violated CMHIP's policies by improperly handling the patient, prematurely escalating the situation, and using improper physical control techniques.  (*See* Doc. # 34-17; Doc. # 34-29; Policy Manual, Exhibits A-3, A-4, and A-5 to Defendant's Motion (Docs. # 34-30, # 34-31, # 34-32); *see also* Doc. # 1-1 at 41-43 of 53).  Based on her conclusions, Ms. Drewnicky terminated Ms. Harp's employment.  (*See* Doc. # 34-2).

III.    Analysis

A.    *Claims Limited to Events within 300 Days of EEOC Charge*

Title VII requires that all claims of discrimination or retaliation be preceded by filing a charge of discrimination with the EEOC and receipt of a "Right–to–Sue" letter. 42 U.S.C. § 2000e–5.  A person aggrieved by an act of discrimination or retaliation must file an EEOC charge within 300 days of the unlawful act. 42 U.S.C. § 2000e–5(e)(1).  "It is well-settled that a claim under Title VII cannot be brought with respect to discrete acts of discrimination that occur more than 300 days prior to the filing of the charge."  *Robinson v. Board of Regents of University of Colorado*, 390 F. Supp. 2d 1011, 1020 (D. Colo. 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("only those acts that occurred 300 days before February 27, 1995, the day that Morgan filed his charge, are actionable")). "*Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted."  *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (internal quotation marks omitted).  Ms. Harp's discrimination and retaliation

claims are timely only if they were the subject of an EEOC charge filed within 300 days of the alleged acts of discrimination or retaliation.

Ms. Harp filed her Charge of Discrimination with the EEOC on November 5, 2008. (*See* Charge of Discrimination, Exhibit A-6 to Defendant's Motion (Doc. # 34-33) (same as Doc. # 1-1 at 20 of 53) (date stamp illegible);  EEOC Case Log, Exhibit A-7 to Defendant's Motion (Doc. # 34-34) (indicating Charge filed on November 5, 2008)).  Her claims are thus limited to acts of discrimination that occurred no more than 300 days prior to the date of her termination, that is, no earlier than January 11, 2008.  From late 2007 to summer 2008, Ms. Harp worked under the supervision of Anna Lewis and experienced "no issues at all relating to harassment or retaliation." (*See* Doc. # 34-15 at 3 of 5).  Thus, the only adverse employment action that occurred during the 300-day period is Ms. Harp's termination.

B.    *Discrimination Based on Race and Gender*

Ms. Harp alleges that she was discriminated against based on her race and her gender.  Under Title VII of the Civil Rights Act of 1964, as amended, it is unlawful for an employer ". . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Ms. Harp does not present any direct evidence of discrimination.  Thus, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Ms. Harp's claims of race and gender discrimination.  *See Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) ("Where a plaintiff relies on circumstantial evidence, the Supreme Court has established a three-step burden-shifting framework for determining whether a plaintiff's evidence raises an inference of invidious discriminatory intent sufficient to survive summary judgment").  Under the *McDonnell Douglas*

analysis, "the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination." *Jackson v. City and County of Denver*, 628 F. Supp. 2d 1275, 1284 (D. Colo. 2008). "If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason" for its employment decision. *Id.*, at 1284-85 (internal quotation marks omitted). If the defendant employer "presents such a reason, the plaintiff bears the ultimate burden of showing that these proffered reasons are a pretext for unlawful discrimination." *Id.* at 1285.

      1.    *Prima Facie Case*

To establish a prima facie case of discriminatory discharge in violation of Title VII, Ms. Harp must "demonstrate that she (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged; and (4) her position was not eliminated after her discharge." *Adamson*, 514 F.3d at 1150 (citations omitted). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Id.* at 1151 (internal quotation marks and citation omitted). Defendant concedes that Ms. Harp is a member of a protected class and that termination of her employment was an adverse action, but argues that Ms. Harp fails to establish any circumstances that support an inference of discrimination. (*See* Doc. # 34 at 13 of 26). *See Luster v. Vilsack,* 667 F.3d 1089, 1095 (10th Cir. 2011) ("To establish a prima facie disparate treatment claim, a plaintiff must present evidence that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination.") (citation omitted).

At the prima facie stage, the plaintiff's burden is "not onerous." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (internal quotation marks and citation

omitted).  *See also Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1171 (10th Cir. 2007)

("Under this formula, a Title VII plaintiff first must establish a prima facie case of

discrimination – a burden so light that only the most baseless of claims fails to satisfy it.").

"[I]n light of the Supreme Court's admonition that the prima facie case is not to be an onerous

or ritualistic burden," the Tenth Circuit concluded that "a plaintiff may make out a prima facie

case of discrimination in a discharge case by . . . her own testimony that her work was

satisfactory, even when disputed by her employer, . . ."  *Kenworthy v. Conoco, Inc.*, 979 F.2d

1462, 1470 (10th Cir. 1992) (internal quotation marks and citation omitted).  Given the light

burden placed on an employee at the prima facie stage, the court assumes at this time

without specifically deciding that Ms. Harp could establish a prima facie case of race or

gender discrimination based on her termination from employment.

### 2.  *Legitimate, Non-Discriminatory Reasons for Termination of Employment*

Even if the court assumes Ms. Harp can establish a prima facie case of discrimination,

Defendant has articulated legitimate, non-discriminatory reasons for terminating her

employment.  At this stage of the *McDonnell Douglas* analysis, Defendants' burden is

"exceedingly light;" Defendants must merely proffer non-discriminatory reasons, not prove

them.  *Zamora*, 478 F.3d at 1165-66 (internal quotation marks and citation omitted).  *See also*

*Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007) (same) (internal citation

omitted);  *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992) (at this stage,

defendant is required only to "explain its actions against the plaintiff in terms that are not

facially prohibited by Title VII."), *rev'd on other grounds by Kendrick v. Penske Transp. Serv.,*

*Inc.*, 220 F.3d 1220 (10th Cir. 2000).  Defendant presents substantial evidence that Ms.

Drewnicky decided to terminate Ms. Harp for improperly handling an incident with patient

D.M. and using improper physical control techniques in violation of CMHIP's policies.  Ms.

Harp's conduct was witnessed by several individuals.  CMHIP police found probable cause

that Ms. Harp had committed patient abuse.  Ms. Harp admitted committing some of the

conduct for which she was terminated.  An Administrative Law Judge found and Ms. Harp

concedes that she used an unauthorized pressure point control technique on D.M.  (*See* Doc.

# 34-3 at 16-17 of 26;  Transcript of Board Rule R6-10 meeting held on September 25, 2008,

Exhibit S to Defendant's Motion  (Doc. # 34-19) at 11-12 of 12;  Transcript of State Personnel

Board hearing, Exhibit V to Defendant's Motion (Doc. # 34-23)).  Defendant has articulated

adequate non-discriminatory grounds for the decision to terminate Ms. Harp's employment,

thus satisfying its burden under the *McDonnell Douglas* burden-shifting analysis.

### 3.    Pretext

A plaintiff can withstand summary judgment if she presents evidence sufficient to raise

a genuine dispute of material fact regarding whether the defendant's articulated reasons for

the adverse employment action are pretextual.  *See Reeves v. Sanderson Plumbing Prods*.,

Inc., 530 U.S. 133, 147–49 (2000).  As Defendant has articulated non-discriminatory reasons

for terminating Ms. Harp's employment, the burden reverts back to Ms. Harp to show that

"there is a genuine dispute of material fact as to whether the employer's proffered reason for

the challenged action is pretextual – i.e., unworthy of belief."  *Randle v. City of Aurora*, 69

F.3d 441, 451 (10th Cir. 1995).  Ms. Harp bears the burden of showing that each reason

given by the employer is unworthy of credence.  *Jaramillo v. Colo. Judicial Dept*., 427 F.3d

1303, 1308 (10th Cir. 2005).  To show pretext, a plaintiff must produce evidence of "such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them unworthy of credence and hence infer that the employer did not act for

the asserted non-discriminatory reasons."  *Jones v. Oklahoma City Public Schools*, 617 F.3d

1273, 1280 (10th Cir. 2010) (internal quotation marks and citation omitted).  Evidence of

pretext may take a variety of forms.  *Swackhammer v. Sprint/United Management Co.*, 493

F.3d 1160, 1167-68 (10th Cir. 2007).  *See also Kendrick*, 220 F.3d at 1230 (employee may

show employer's proffered reason to be pretextual in a variety of ways: by showing that the

stated reason is false, by showing that the employer acted contrary to a written company

policy, or by showing that the employer acted contrary to an unwritten company policy or

practice, among others).

> To support an inference of pretext, to suggest that something more nefarious
> might be at play, a plaintiff must produce evidence that the employer did more
> than get it wrong. He or she must come forward with evidence that the
> employer didn't really believe its proffered reasons for action and thus may have
> been pursuing a hidden discriminatory agenda. This is because Title VII
> licenses us not to act as a "super personnel department" to undo bad
> employment decisions; instead, it charges us to serve as a vital means for
> redressing discriminatory ones.

*Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1211 (10th Cir. 2010) (citation omitted).

In determining whether the proffered reasons for a decision were pretextual, the court

must examine "the facts as they appear to the person making the decision to terminate [Ms.

Harp]."  *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (internal quotation

marks and citations omitted).  "The relevant inquiry is not whether [the employer's] proffered

reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted

in good faith upon those beliefs."  *Rivera v. City and County of Denver*, 365 F.3d 912, 925

(10th Cir. 2004) (internal quotation marks and citation omitted).  "Pretext exists when an

employer does not honestly represent its reasons for terminating an employee."  *Miller v. Eby

Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005).  "The factfinder must be able to

conclude, based on a preponderance of the evidence, that discrimination was a determinative

factor in the employer's actions – simply disbelieving the employer is insufficient."  *Id.*  Once

the employer's proffered reason is shown to be pretextual, the factfinder may infer that

prohibited discrimination is the real cause for the adverse action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519  (1993), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009).

Ms. Harp has not presented any evidence to establish that Defendant's articulated reasons for her termination were pretextual.  First, Ms. Harp has conceded that her termination was not based on gender discrimination.  (*See* Doc. # 34-11 at 29, 31 of 31 ("Q. Okay. And when did you first think that your termination from employment was related to your sex?  A. I don't know so much if my termination was related to my sex, but I'm certain that my race was.")).  Nor does Ms. Harp present any evidence that her termination was based on a discriminatory motive related to her race.  Ms. Drewnicky was the decisionmaker who terminated Ms. Harp's employment.  (*See* Doc. # 34-11 at 30 of 31).  There is no evidence suggesting that Ms. Drewnicky based her decision on any racial animus.  Ms. Harp concedes and the evidence shows that Ms. Drewnicky conducted the investigation of Ms. Harp's conduct no differently than she conducted investigations of conduct by employees of other races.  (*See* Doc. # 34-29 at 10 of 10; Doc. # 34-11 at 30 of 31).  Ms. Drewnicky has terminated white employees for patient abuse, although the type of abuse alleged was different.  (*See* Doc. # 34-29 at 2-3 of 10).  Ms. Drewnicky did not make any racial jokes.  (*See* Doc. # 34-11 at 28-29 of 31).  To the extent that Ms. Harp believed Ms. Drewnicky made a statement that CMHIP needed to protect patients from "those kind of people," which Ms. Harp interpreted "as a racial thing," the record does not contain any such statement.  (*See* Doc. # 34-24;  Doc. # 34-11 at 27 of 31).

There is no evidence that Ms. Drewnicky did not honestly believe that Ms. Harp violated CMHIP's policies by her handling of the incident with patient D.M.  *See Locke v. Grady County*, 2011 WL 3648140, at * 5 (10th Cir. Aug. 19, 2011) (facts appearing to decisionmaker at the time provided a legitimate, non-discriminatory reason for firing plaintiff).

Ms. Harp has not presented facts from which a reasonable jury could conclude that the decision to terminate her was so meritless as to call into question its actual motivation.  *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (finding no evidence "of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.") (internal quotation marks and citation omitted). The undisputed facts in the record before the court do not create an inference that Ms. Harp's termination was motivated by discriminatory intent based on her race or gender.  As Ms. Harp fails to establish that Defendant's reasons for her termination were a pretext for discrimination, Defendant is entitled to summary judgment on her claims of race and gender discrimination.

## C.    Retaliation

Ms. Harp generally identified retaliation in her Charge of Discrimination filed with the EEOC on November 5, 2008.  (*See* Doc. # 34-33).  In the EEOC Intake Questionnaire, Ms. Harp did not describe any retaliation.  (*See* EEOC Intake Questionnaire, Exhibit A-8 to Defendant's Motion (Doc. # 34-35)).  Ms. Harp "amended" her EEOC Charge on or about June 9, 2009, "requesting a right to sue letter based upon retaliation and race discrimination." (*See* correspondence addressed to Philip Gross "Re: Amended EEOC Charge of Discrimination," Exhibit A-9 to Defendant's Motion (Doc. # 34-36) (same as Doc. # 1-1 at 1-3 of 53).  Ms. Harp also submitted a Position Statement to the EEOC on or about July 27, 2009.  (*See* Position Statement, Exhibit O to Defendant's Motion (Doc. # 34-15) (same as Doc. # 1-1 at 15-19 of 53)).  In both of these documents, Ms. Harp represented that Ms. Manchester filed a complaint of patient abuse against her "in retaliation for my challenging

internal procedure and for my lodging a complaint against her for improperly denying my annual leave request" when Ms. Harp had "questioned an internal practice at CMHIP regarding how the narcotics tracking document was to be completed by staff." (*See* Doc. # 34-36 at 1-3 of 5, Doc. # 34-15 at 1-3 of 5).   Ms. Harp also filed a complaint with the Department of Human Services Civil Rights Unit, in which she alleged that Ms. Manchester retaliated against her and harassed her because of a dispute in December 2006 about the narcotics tracking document. (*See* Employee Discrimination Complaint Form, Exhibit M to Defendant's Motion (Doc. # 34-13); Doc. # 34-11 at 7 of 31 (Ms. Harp filed no other complaints with the Civil Rights Unit)).

Title VII forbids retaliation against an employee because she has "opposed" any practice made unlawful by Title VII, or because she has "participated . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).   Where there is no direct evidence of retaliation, the burden-shifting analysis established in *McDonnell Douglas* also applies to retaliation claims. *Kendrick*, 220 F.3d at 1229-30. *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (a plaintiff can prove retaliation "by relying on the three-part McDonnell Douglas framework") (internal quotation marks omitted).   To establish a prima facie claim of retaliation, a plaintiff is required to prove that (1) she engaged in protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there is a causal connection between the protected activity and the adverse employment action. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006) (citation omitted). *See also Khalik*, 671 F.3d at 1193 (same).   "As with claims for discriminatory discharge, if the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. If the employer satisfies this burden of production, then, in order to prevail on her retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action is

14

pretextual, *i.e.* unworthy of belief." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (internal quotation marks and citations omitted). *See also Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004) (when a defendant asserts non-discriminatory reasons for its actions, a plaintiff must also establish that the defendant's reasons are a pretext for retaliation).

For purposes of a prima facie case of retaliation, Defendant does not contest that Ms. Harp's termination from employment was an adverse action. To the extent that her retaliation claim is based on her dispute with Ms. Manchester about internal procedures governing the narcotics tracking document, Defendant argues and the court agrees that Ms. Harp has not established that she engaged in protected activity. Protected activity is defined as either participation in a Title VII investigation or proceeding or opposition to practices unlawful under Title VII. 42 U.S.C. § 2000e-3(a). Complaints regarding work-place procedures that are unrelated to race, color, religion, sex, or national origin, are not protected activities under Title VII, and thus, do not satisfy the first prong of the prima facie requirements for retaliation. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) ("General complaints about company management" are not protected activity for purposes of a Title VII retaliation claim); *Brush v. Sears Holdings Corp.*, No. 11-10657, 466 F. App'x 781, 787 (11th Cir. 2012) ("Disagreement with internal procedures does not equate with protected activity opposing discriminatory practices.") (internal quotation marks omitted); *Faragalla v. Douglas County School Dist. RE 1*, Nos. 09-1393, 10-1433, 411 F. App'x 140, 148 (10th Cir. Jan. 12, 2011) (none of plaintiff's complaints of "feeling demeaned by . . . yelling and finger pointing and being given a heavier workload than" others, "harassment" by others, or that a performance improvement plan was "retaliatory and discriminatory" made any reference to protected activities under Title VII). Absent evidence that she engaged in protected opposition to discrimination, Ms. Harp fails to establish a prima facie case of retaliation.

Ms. Harp's retaliation claim also fails to the extent that it is based on alleged complaints of race discrimination.  To establish a causal connection between a protected activity and an adverse employment action, a plaintiff must prove that the adverse employment action would not have occurred "but for" her protected activity.  *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1118 (D. Colo. 2008).  Ms. Harp admitted that her first complaint of race discrimination was her EEOC charge, which was filed approximately one month after her termination.  (*See* Doc. # 34-11 at 24-25 of 31; Doc. # 34-33).  Because the evidence is undisputed that CMHIP investigated and terminated Ms. Harp before she complained of race discrimination, she cannot establish the requisite causal connection between any protected activity and her termination.  *See Sunderman v. Westar Energy, Inc.*, 307 Fed. Appx. 224, 229 (10th Cir. 2009) ("[F]or a protected activity to cause the adverse employment action, the adverse action must necessarily occur after the protected activity.") (internal quotation omitted).

The court concludes that Ms. Harp's retaliation claim also fails to the extent that it is based on alleged complaints of gender discrimination.  The only documented complaint of gender discrimination is Ms. Harp's EEOC Charge of Discrimination, which was filed after she was terminated.  Ms. Harp cannot establish the requisite causal connection with a complaint filed after she was terminated.  Ms. Harp further contends that she complained of sex discrimination in an April 2007 meeting and during a 2007 mediation session regarding CSSO II duties.  (*See* Doc. # 34-11 at 25-26 of 31).  Ms. Harp's retaliation claim also fails to the extent it is based on these complaints.

First, the investigation and Ms. Harp's termination in 2008 occurred more than 17 months after her alleged complaints.  It is well-established in the Tenth Circuit that a lapse of three months or greater is insufficient to establish the requisite causal connection between the protected activity and the adverse employment action.  *See, e.g., Meiners v. Univ. of*

*Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (time lapse of up to three months was too long to establish temporal proximity); *White v. Schafer*, 738 F. Supp. 2d 1121, 1136 n.9 (D. Colo. 2010) (time period between two and three months "strains the outer boundaries of the temporal proximity test.").

Second, "[t]o establish the requisite causal connection between [her] protected conduct and termination, [Ms. Harp] must show that [Defendant was] motivated to terminate [her] employment by a desire to retaliate for [her] protected activity." *Hinds*, 523 F.3d at 1203 (citation omitted). "As a prerequisite to this showing," Ms. Harp "must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire [her] had knowledge of [her] protected activity." *Id.* (citation omitted). *See also Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993) ("To establish a causal connection, plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity."). "Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee because of the protected conduct, as required by statute." *Jones v. UPS, Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007). *See also Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) ("employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII"). There is no evidence that the decision maker, Ms. Drewnicky, was aware of the complaints Ms. Harp made in 2007 or considered them when deciding to terminate her employment. Because the evidence does not demonstrate a causal connection between a protected activity and an adverse employment action, Ms. Harp fails to establish a prima facie case of retaliation.

Even if Ms. Harp could establish a prima facie case for her retaliation claim, as with her race and gender discrimination claims, Ms. Harp must satisfy the burden-shifting framework established in *McDonnell Douglas*. *Anderson v. Coors Brewing Co.*, 181 F.3d

1171, 1178 (10th Cir. 1999).  As discussed above, Defendant has established its

"exceedingly light" burden by demonstrating legitimate, non-discriminatory reasons for Ms.

Harp's termination.  Thus, the issue once again becomes whether Ms. Harp can establish

that these asserted reasons were merely a pretext for retaliation.  "[T]he pertinent question in

determining pretext is not whether the employer was right to think the employee engaged in

misconduct, but whether that belief was genuine or pretextual."  *Pastran v. K-Mart Corp.*, 210

F.3d 1201, 1206 (10th Cir. 2000) (citation omitted).  Ms. Harp does not present evidence

"sufficient to raise a genuine doubt about Defendant's motivation."  *Jones*, 349 F.3d at 1268

(internal quotation marks and citation omitted).  The evidence does not support a claim that

Ms. Harp would not have been terminated from her employment "but for" protected activity,

rather than based on her conduct on July 21, 2008.  Ms. Harp's retaliation claim fails on the

same grounds that her race and gender discrimination claims fail, that Defendant had

legitimate reasons for its termination decision and she has not met her burden of showing

that Defendant's proffered basis for her termination was a pretext for retaliation.  Ms. Harp

fails to establish genuine issues of material fact to survive summary judgment on her

retaliation claim.

D.    *Hostile Work Environment*

Ms. Harp alleges that she was subjected to a hostile work environment due to her race

in violation of Title VII.  (*See* Doc. # 1 at 2 of 54 (describing her claims as including

"Harassment-Hostile Environment")).  "Title VII affords employees the right to work in an

environment free from discriminatory intimidation, ridicule, and insult."  *Meritor Sav. Bank,*

*FSB v. Vinson*, 477 U.S. 57, 65 (1986).  "To survive summary judgment on a claim alleging a

racially hostile work environment, [the plaintiff] must show that a rational jury could find that

the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

18

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that the victim "was targeted for harassment because of [her] race or national origin." *Hernandez v. Valley View Hospital Assn.*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks and citation omitted).  *See also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex or race.").

In her deposition, Ms. Harp raised several alleged racially-motivated incidents of hostile environment: that in 2007 a patient "referred to [her] as a little monkey" and stated "Well, that's what [Ms. Manchester] said;"  that in 2007 Ms. Manchester said she thought Ms. Harp was incompetent; that in 2007 Ms. Manchester pushed Ms. Harp away from a patient; that in 2007 Ms. Manchester discussed in front of a patient an incident involving a family member of Ms. Harp's; that in 2007, a nurse, Joseph Mendoza, made a joke about a weave hair style; and that in 2008 Ms. Manchester wrote in a report that patient D.M. made a racial slur to Ms. Harp.  (*See* Doc. # 34-11 at 4-6, 8-21 of 31;  Doc. # 34-1 at 12 of 14).

First, only the incident in 2008 occurred within the 300-day period prior to the filing of Ms. Harp's EEOC charge.  When reviewing a hostile work environment claim, a court may consider events outside the 300-day period, if at least one act falls within the filing period and if the acts are part of the same actionable hostile work environment practice.  *Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1308-09 (10th Cir. 2005). "[A] series of alleged events comprises the same hostile environment where the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* at 1309 (internal quotation omitted).  Here, the alleged incidents in 2007 are different in nature from the alleged incident in 2008.  One of the events in 2007 involved Mr. Mendoza, while Ms.

19

Manchester wrote the report in 2008.  The incidents in 2007 were far removed in time from the 2008 report.  CMHIP transferred Ms. Harp to a new supervisor in 2007 and Ms. Harp admits she suffered no more harassment until the summer of 2008.  (*See* Doc. # 34-15 at 3 of 50; *Duncan*, 397 F.3d at 1308 (noting that an employer's intervening action may in some circumstances defeat the establishment of a continuing violation)).  Ms. Harp does not sufficiently demonstrate that the alleged incidents in 2007 were part of the same hostile work environment such that the court may consider events outside the 300-day period under the continuing violation doctrine.  Thus, her hostile work environment claim is limited to the report in 2008.

Even if the court considered all of the incidents Ms. Harp raises, she does not demonstrate that the incidents were either sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, or based on her race.  "A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents . . . ."  *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).  A hostile work environment claim "must be based on severe and pervasive discriminatory intimidation or insult."  *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003).  "To establish a racially hostile work environment, however, plaintiffs must prove more than a few isolated incidents of racial enmity."  *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412-13 (10th Cir. 1987) (citations omitted).  "One of the critical inquiries in a hostile environment claim must be the *environment*.  Evidence of a general work atmosphere . . .  -- as well as evidence of specific hostility directed toward the plaintiff -- is an important factor in evaluating the claim."  *Id.*, at 1415 (emphasis in original).  Among the factors appropriately considered are (1) whether the discriminatory conduct is frequent or severe, (2) whether it is physically threatening or humiliating, or a mere offensive utterance, and (3) whether it unreasonably interferes with an employee's work performance.  *Penry v. Federal Home Loan Bank of*

*Topeka*, 155 F.3d 1257, 1264 (10th Cir. 1998).  The plaintiff must demonstrate that the work environment was hostile under both an objective and subjective standard.  *Witt v. Roadway Express*, 136 F.3d 1424, 1432-33 (10th Cir. 1998).  In determining whether an actionable hostile work environment existed, the court must consider "all the circumstances," *Morgan*, 536 U.S. at 116, viewed through the perspective of a reasonable person in a plaintiff's position.  *Montes*, 497 F.3d at 1170.

Ms. Harp has conceded that some of the incidents were not related to her race.  (*See* Doc. # 34-11 at 9-10 of 31 ("Q. Okay. When Ms. Manchester said she thought you were incompetent, did you think that was a statement about your race?  A. I'm not sure exactly what her intent was . . . Q. Okay. In April 2007, when Ms. Manchester made the statement about you being incompetent, at that point in time, did you feel that Ms. Manchester was making a statement about your race?  A. No. I felt that she was just trying to make a dig at the fact that she didn't think that I belonged in that position, that I wasn't qualified for it.");  Doc. # 34-11 at 12-13 of 31 ("Q. Did you think that Gail Manchester pushed you away from the patient because of your race?  A. I think Gail just has issues with me. I really don't know what her reason for it was. . . It had nothing to do with that. She just didn't like me. It's just a bizarre thing.");  Doc. # 34-11 at 14-15 of 31 (Q. . . . did you think that Gail Manchester talking about the incident involving your family member in front of a patient was an incident of race discrimination?  A. I think it was an incident of unethical, unprofessional behavior. And I believe it was an incident of disclosing personal information that had nothing to do with her or the patient. That shouldn't have been talked about in front of the patient.  Q. Do you think that Gail Manchester disclosed that information to the patient because you're black?  A. I didn't think anything about my color.").

Ms. Harp concedes that Ms. Manchester never called her a monkey directly.  (*See* Doc. # 34-11 at 6 of 31).  Ms. Harp's only evidence of this allegation is the hearsay testimony

of a mentally incompetent patient, which is not admissible evidence for purposes of rebutting a motion for summary judgment.  *See, e.g., Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 (10th Cir. 2000) ("Ms. Riggs admitted that she was not present during this conversation Accordingly, her hearsay testimony is inadmissible in support of, or opposition to, summary judgment.") (internal quotation marks and citation omitted);  *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (noting that hearsay testimony may not be considered to oppose a motion for summary judgment).  Ms. Harp's testimony that she does not give credence to racist comments from patients does not support the existence of a subjectively hostile work environment.  (*See* Doc. # 34-11 at 20-21 of 31; Doc. # 34-12 at 3 of 4).  Further, Ms. Harp establishes no connection between this comment in 2007 and her termination in September 2008.

As to Mr. Mendoza's joke about a weave hair style, Ms. Harp admits that this was the only comment made by Mr. Mendoza that she believed was racial.  (*See* Doc. # 34-11 at 19 of 31).  She merely speculates that Ms. Manchester played a role in Mr. Mendoza's joke. (*See id.* at 17-18 ("Q. How do you know that that was motivated by Gail?  A. First of all, she would have to tell him because he wasn't working that day. The idea of her thinking that she knew that I wore a weave, which I didn't, is something that would relate to Gail and her ex-partner. . . Q. You mentioned something about Gail Manchester knowing about a weave and her partner, and I wasn't clear about that part of your answer.  A. Gail's partner was a black female. And so I would assume that Gail thinks that she knows about the going-ons of taking care of hair and what you wear when you're black.  A lot of people wear weaves now. It started off with mostly black women wearing weaves and extensions and, you know, different hairstyle techniques. And for some reason they thought I was wearing a weave.  Q. Did you ever have other conversations with Gail Manchester about weaves?  A. No. . . I

never had a conversation about my hair or anything, no.")).  Nor does Ms. Harp establish any connection between this comment in 2007 and her termination in 2008.

Ms. Harp raises Ms. Manchester's inclusion in her written report of the July 21, 2008 incident of a racial slur used by patient D.M.  This contention is based purely on Ms. Harp's subjective interpretation and speculation.  (*See* Doc. # 34-11 at 21 of 31 ("Q. And so why did you feel it was discriminatory when Gail Manchester reported that patient DM had called you a nigger to Irene Drewnicky?  A. Because she wanted it to seem like I reacted to that word and that she knew that I was upset and that she could tell that I was upset, which is not true. And she knows it's not true.")).  Ms. Harp indicated in her testimony that a supervisor's reports of a hospital investigation "are supposed to be detailed. . . I put in there when I'm called a nigger or anything. I don't leave anything out. They shouldn't be any different from one report to the other."  (*See* Doc. # 34-11 at 22-23 of 31).  Ms. Harp has not demonstrated Ms. Manchester's report was racially motivated or objectively and subjectively offensive.

After considering the facts and inferences in Ms. Harp's favor and considering the "general work atmosphere . . . [and the] evidence of specific hostility directed toward the plaintiff . . . ," the court concludes that she has not met her burden of showing hostile work environment discrimination based on her race.  *See, e.g., Boyd v. Presbyterian Hosp.*, 160 F. Supp. 2d 522, 541-42 (S.D.N.Y. 2001) (holding that while an African-American nurse was subjected to gossip, lower performance evaluation, and intense scrutiny of her work performance that were annoying, bothersome, and stress-inducing, they did not create a hostile work environment);  *Kline v. Utah Anti–Discrimination and Labor Division*, No. 10-4082, 418 F. App'x 774, 783 (10th Cir.2011) ("two inappropriate jokes and a few overheard comments which contained sexual innuendo are not severe or pervasive enough to create a hostile work environment").  Defendant is entitled to summary judgment on Ms. Harp's hostile work environment claim.

E.     *Additional Claims*

Ms. Harp also appears to allege that Defendant discriminated against her based on "Failure to hire, . . . Failure to follow Board rules, and Defamation."  (*See* Doc. # 1 at 2 of 54). First, she alleges no facts to support her purported claim for failure to hire.  A complaint is reviewed to determine whether it "contains enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.").  "[A] complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, Nos. 08-cv-02790PAB-MJW, 08-cv-02794-PAB-MJW, 2009 WL 2924777 * 2 (D. Colo. Sept. 9, 2009) (internal quotation marks and citation omitted).  Without facts to support it, Ms. Harp's claim for failure to hire is properly dismissed for failure to state a claim to which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6);  *Twombly*, 550 U.S. at 555.

Second, "a finding of a failure on the part of the . . . employer to follow its own regulations and procedures, alone, may not be sufficient to demonstrate discrimination, unless it is probative . . . in determining the true motivation behind the . . . decision." *Downing v. Tapella*, 719 F. Supp. 2d 88, 97 (D.D.C. 2010) (internal quotation marks and citation omitted).  *See also Settle v. Baltimore County*, 34 F. Supp. 2d 969, 990 (D. Md. 1999) ("allegations that defendants violated internal Department regulations do not implicate Title VII" where plaintiff failed to show that internal investigation was based on race or motivated by a retaliatory motive) (citing *Vaughan v. Metrahealth Companies, Inc.*, 145 F.3d 197, 203

(4th Cir.1998) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent . . . . Federal courts cannot ensure that business decisions are always informed or even methodical.") (citation and internal quotation omitted).  The court's determination, above, that Ms. Harp has not demonstrated that discrimination played any role in her termination, precludes Ms. Harp's claim based solely on a "Failure to follow Board rules."

Third, the Colorado Governmental Immunity Act ("CGIA") provides a public entity the defense of sovereign immunity against actions for tort injuries, subject to an enumerated list of exceptions.  Colo. Rev. Stat. § 24–10–106.  The existence of immunity under the CGIA is an issue of subject matter jurisdiction.  *Colorado Special Districts Property and Liability Pool v. Lyons*, 277 P.3d 874, 879 (Colo. App. 2012) (citation omitted).  CMHIP is a division of a Department of the State of Colorado.  *Lang v. Colorado Mental Health Institute in Pueblo*, 44 P.3d 262, 263 (Colo. App. 2001).  *See also Goebel v. Dept. of Institutions*, 764 P.2d 785, 788 (Colo. 1988) ("The delivery of public mental health services in Colorado is supervised by the Colorado Department of Institutions through its Division of Mental Health.").  Under the statutory definition of "public entity" in the CGIA, "[p]ublic entity means the state, . . . ."  Colo. Rev. Stat. § 24–10–103(5).  A defamation claim is based upon tort theory, *see Barnett v. Denver Pub. Co., Inc.*, 36 P.3d 145, 148 (Colo. App. 2001) (Defamation is "an injury to person or property occasioned by the tort of any other person.") (internal quotation marks and citation omitted), and is not one of the six enumerated exceptions to tort immunity set forth in the CGIA, *Gallagher v. Board of Trustees for University of Northern Colorado*, 54 P.3d 386, 395 (Colo. 2002).  The CGIA bars "any action against a public entity" or its employees "for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant." Colo. Rev. Stat. §§ 24–10–108, 24–10–118(2)(a). . Ms. Harp's defamation claim against CMHIP must be dismissed as barred by the CGIA.

Fourth, the longest period of limitations that could apply to Ms. Harp's defamation claim is the two-year limit for tort claims. *See* Colo. Rev. Stat. § 13-80-102(1)(a).  While the statute of limitations ordinarily must be pled and proved as an affirmative defense, a complaint may be dismissed on statute of limitations grounds "if it is apparent from the face of the complaint that the claim is time-barred."  *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (internal quotation marks and citation omitted).  *See also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaint may be dismissed where the "allegations of the complaint itself set forth . . . that an action is untimely under the governing statute of limitations") (citation omitted);  *Bullington v. United Air Lines Co.*, 186 F.3d 1301, 1310 n. 3 (10th Cir. 1999) (noting "that Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period") (citation omitted), *implicitly overruled on other grounds as recognized by Boyer v. Cordant Technologies*, 316 F.3d 1137, 1140 (10th Cir. 2003).  Ms. Harp filed her Complaint on July 29, 2011.  (*See* Doc. # 1).  She alleges that she was aware that the events that underlie her claims occurred no later than September 30, 2008, the date of her termination.  As the factual averments of the Complaint indicate that her defamation claim is time-barred, her claim must be dismissed.

Finally, while 28 U.S.C. § 1367(a) gives the federal district courts supplemental jurisdiction over all other claims that are sufficiently related to the claims within the original federal jurisdiction of district courts, 28 U.S.C. § 1367(c) provides that:

> "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
> . . .
>> (3) the district court has dismissed all claims over which it has original jurisdiction, . . .

Because the court recommends summary judgment be entered in favor of Defendant on the claims over which the court has original jurisdiction, the court further recommends that supplemental jurisdiction be declined over any claim for defamation that Ms. Harp alleges.

Accordingly, IT IS RECOMMENDED that "Defendant's Motion for Summary Judgment" (filed August 16, 2012) (Doc. # 34) be GRANTED and that judgment be entered in favor of Defendant and against Plaintiff on the Title VII claims in the Complaint and that the remaining claims in the Complaint ("Failure to hire, . . . Failure to follow Board rules, and Defamation") be dismissed.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999).  (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morals-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 22nd day of February, 2013.

BY THE COURT:


  s/Craig B. Shaffer
United States Magistrate Judge